Good morning. My name is John Young. I represent Earl Ball. On October 4 of 1999, Mr. Ball received consecutive 10-year aggravated sentences for each of two videotapes. The second part of the certified question, on October 16 of 2000, he received concurrent nine-and-a-quarter year presumptive sentences with a prior conviction on each of 10 photographs. The presumptive sentences on the photographs would obviously not be part of the Blakely claim. So it's just the 10-year aggravated sentences that are at issue? That's correct. And what is your response to the argument that your client should be careful what he wishes for, because if he wins here, he'll be resentenced under an even longer potential term under a different statute? I've talked to Mr. Ball about that. The case itself has Mr. Ball's name on it, not my name, so I can't dismiss it on his behalf. He's not interested in dismissing this case. He understands that there is a possibility that he could raise his total sentence from 20 years to 34 years. If he goes to a jury on either of these, either the aggravation or – would your position be that he can't go back on the DCAC allegation or he can? I think that going back, he might have some arguments. I've directed him to North Carolina v. Pierce. I'm not sure if that would help out. I've also pointed out – Well, the DCAC allegation was originally alleged, and it was ruled inapplicable by the trial judge, but on a ground that was later held inapplicable. So could he go back on that? I guess I have a complicated answer to that question, Your Honor. The question really in the entire case, the Blakely question, turns on whether those consecutive 10-year sentences were aggravated or whether they were mitigated. I have a further question on the Blakely issue, and that is it appears to me that trial counsel affirmatively stated the age of the victim to be around 12 and that she was clearly prepubescent and that there was no doubt that she was 12. Isn't he bound by defense counsel's affirmative representations as judicial admissions that the victim was under the age of 15? No. Those admissions were not part of the evidence that was ever produced to the jury. I think it's – That's the whole point of asking whether it's a judicial admission, because if, for example, a defense lawyer might consciously say, I'd rather not have all this evidence come in before a jury because it's, you know, not going to help my client, so I will stipulate that the victim is 12 and let's not talk about that anymore, that didn't exactly happen because the stipulation fell short of stating the precise age. But counsel specifically told the jury in opening statement that this person was 12 years of age. And I guess I have difficulty seeing why a judicial admission does not substitute for a jury finding. I think I don't have the opening statement in front of me. I apologize. I may have some time before rebuttal to take a look at that. I think that the point of Blakeley was that the aggravators are elements of a greater offense. And so when Blakeley is talking about admissions, they're not talking about party admissions for evidentiary purposes. They're talking about admissions in a plea proceeding is what Blakeley refers to as admissions. There are such a thing as party admissions. And I don't want to conflate the two because one is evidentiary and one is an actual admission of an element that has to be taken in a plea proceeding. But what difference does that make in this instance? I mean, if you suppose it was simply an evidentiary admission, I mean, your objection to the other claim of admission was that they only admitted that this expert was going to say that, but this was an admission of a fact. And the only pause that I have about it is that it was about a fact that was assertedly not before the jury at the time because she'd been told – I mean, it was before the jury, though, that this person was a minor. Whether she was 12 was not an issue for the jury with regard to the sentence. But there was a reason why it mattered. It didn't exactly matter, but the age of the person did matter. She had to be a minor, right? Right. I think what was going on there was the relevant age was 18. Right. And there was just no way he was going to get around the age of 18. Right. So whether she was 12 or whether she was 17 or somewhere in between. But she said she was 12. I'm looking in particular, actually, at the voir dire. And when you go back and look, it's at 1427 and 1428, where repeatedly the defense lawyer is explaining to the panel, the jury panel, what it's about. I would say that voir dire – in fact, when I'm in trial, at the end of the trial, the judge always instructs the jury that whatever Mr. Young said is not evidence. I don't think that it's evidence. I think it could be treated as a party admission, and it's – Right. That's different, because if the jury isn't asked to decide it, it doesn't have to be evidence, but it could still be a party's admission. Well, if I said it in closing or if I said it in opening, it wouldn't be evidence. Certainly, if I said it in voir dire, it would be prior to the taking of any evidence. In the opening statement, counsel said there is no doubt that the victim in the videos was 12 years old. Isn't that a clear judicial admission that took away from the jury any concern about the age of the trial or any duty to make that determination? That was maybe an ill-advised statement on trial counsel's part. But it is a judicial admission. Well, I don't think it's part of the evidence. Why? Judicial admissions are. Well, it's more like a pleading than a piece of evidence, but isn't it still binding whether you categorize it as evidence or as a form of pleading? I guess I'd like to – I guess the law students today are learning to be careful what they say on opening statement. This was not my opening statement. This was not what I would have said if I were talking to the jury. But suppose it wasn't. In any event, there was certainly evidence in the trial, including the pictures themselves. I mean, apparently what the lawyer actually said was you can look at this picture and see that she's prepubescent. Correct. And so the pictures were in evidence, and the victim testified as to how old she was at the time, right? Correct. So to jump ahead a little, why is it all harmless there anyway? Well, to get to that point, as we were discussing at the time, this was pre-Blakely, and at the time, the issue of under or over 15 was not. Well, I understand that. But the question is, was there any way, given what the actual trial evidence was, that there could have been any proof that she wasn't under 15? I think that the evidence that was at trial didn't – there was no motivation for defense counsel at that trial to cross-examine on the issue of over or under 15 because it just was not an issue. And I think that when there's no motivation to cross-examine somebody on something Somebody stands up and says that's how old I was at the time. And what good is it going to do to cross-examine her? Well, there's no point to that. And you can see a picture of her. And the lawyer says, you – says exactly that. Look at the picture. You can see that she's 12 years old. It could be that that was just a fight that the lawyer didn't see or any need to get into. This – this particular point of whether she's under 15 has never been through a crucible of cross-examination. It's – it's never – there's never been any motivation to develop a record on that issue. And so for that reason, for instance, I point out in my reply brief that it would not be sufficiently reliable, for instance, for this testimony to be used as former testimony under a rule of evidence. I don't know whether – what you're saying is you want to go back and try that. Or are you saying that should never have been on the table anyway because it was the court – the way the court did this switch, it couldn't do. And therefore, the only thing that's legitimately in the case is this profligate lifestyle enhancement and not this DCAC thing. Because if – if the question is whether she's under 15, it seems to me there was nothing to try. Well, the – the question of whether she was under 15 or not never was tried. I understand that. But – but if that's what you're – you're asking – you're saying you want to go back and now try. In other words, if that was the Booker problem or it was the Booker problem or the Blakely problem, that on the ground that the district – that the trial court actually went off on, there was no – there was a Booker – there was a Blakely  We're talking about going back and retrying the question of under 15, and maybe my next point will address that. The decision in this case was – was quirky. I think quirky is going to be the word of the day today. The trial court decided that 13604.01 DCAC, dangerous crimes against children, does not apply to this statute, this 133553 child pornography statute. That was the decision of the trial court. There was reasoning there that the phrase against a child under 15 means targeting a child under 15, and that was supported by some DUI cases. So the trial court felt that the 10-year sentences were aggravated. The Arizona Court of Appeals took a look at it. The State noticed an appeal from the trial court's decision on the DCAC issue, and then it abandoned the issue on appeal. And what happened is in footnote 6 of the Arizona Court of Appeals opinion, it says, we do not address the issue. And so the Arizona Court of Appeals did not address the issue, although they did start with a different premise and just went ahead and applied DCAC anyway. So the quirky point is that the last reason State court decision on the issue was by the trial court, and that was a decision that DCAC does not apply. So I think it would be difficult to remand it back for a hearing on whether or not DCAC does apply, because the time has long since run on an issue. So now I'm really confused. And this is the part that I've been trying to get you to tell me about. So you seem to be saying that the DCAC issue should be out of the case, now, even now. I think there's a very good argument that at this point it's out of the case. Sotomayor, I'm simply arguing that it's law of the case that DCAC doesn't apply. It is the law of the case. Arizona has a different approach than the Ninth Circuit with respect to illegal sentences. There is a case in Arizona, State v. Dawson. It's a 1990 case out of the Supreme Court. And it explicitly says that there is no jurisdiction to consider an illegal sentence unless the State appeals it. And that opens a whole other can of worms, because I think the State did appeal it. They just abandoned it on appeal. I don't know what the answer to that is going to be. So at a minimum, if you prevailed on your Blakely argument, you would go back for a trial on the – I forget what the other – I understand the enhancement for whatever the district trial judge originally did, the bad lifestyle enhancement. Is that what you would do? Well, there's several different things that could be remanded for. They're all very difficult. It's hard to remand for a jury determination of what's essentially a catch-all aggravator. It's not one of the statutory aggravators. But you'd have to. I mean, after Blakely, if it's an aggravator, then you'd have to have a trial on it. I would have to think that Blakely should, I would imagine, invalidate all catch-all aggravators. Why? Because there's ex post facto trouble there to have an element of an offense that nobody knows. It's a listed element. It's not ex post facto. It was there in the statute at the time he committed his crime. It wasn't added later. The only thing that was added was who decides whether it fits under the existing statutory scheme. There's no change to the statute. Right. So we just have a different decision maker. I don't understand why you'd excise portions of statutes. Well, I agree that the catch-all factor was part of the statute at the time. Right. Almost word for word what it says is, and anything else that the State thinks of to allege at the time of sentencing, that's a very strange element to have in a statute, anything else that the State alleges. So I think that that may be where Mr. Ball is if he goes back. He would certainly have an ex post facto argument, and he would have to, I think, bring that up at that time. It's hard to remand with respect to DCAC for a jury determination on something that was dismissed and then was never appealed. I think that DCAC is over with. Counsel, you've exceeded your time, and I think we understand your position. If there's no further questions, that's all I have. Thank you. We'll hear from the State. Good morning. Craig Soland on behalf of Respondent Charles Ryan. The first point I'd like to just reiterate is that as a matter of law, the Arizona Supreme Court has, I mean, the Arizona Court of Appeals, excuse me, has determined that the applicable statute to appellant's offense is the dangerous crimes. Well, except they specifically said they didn't decide that. Pardon? There's a footnote that says, The State filed notices across appeal after each trial, asserting the trial could have erred by refusing to sentence him under DCAC, but failed. Accordingly, we do not address this issue. So if you don't agree. Excuse me. I didn't mean to interrupt. The issue the Court didn't address is whether it should be reversed, whether the sentence should be reversed, and the Court should at that point go put a new sentence into play. It doesn't prevent the Court from determining that the proper statute for appellant's offense was. Where does it decide that? Pardon? Where does it decide that? Where does it decide that? I mean, it applies it, but where does it decide the question of whether the trial court's conclusion that it shouldn't, doesn't apply was right or wrong? It does, certainly, inferentially, if not expressly, when the Court says that appellant got less than the presumptive because the proper sentencing statute with respect to his offense was DCAC, which had a presumptive of, what is it, 17 years, and that as a result, both the defendant and the plaintiff were sentenced to seven years less than the presumptive. That's the core of the Court of Appeals' ruling. Right. They basically said it's harmless error because the Court mistakenly gave him an easier statute, an easier sentence. That's how I read it. Well, I almost agree with that, except for I would use the error part. I think what the Court was saying is that the trial court's error in applying the wrong statute. Oh, we did. It says the error, right. And rather than saying that there was Blakeley error but the Blakeley error was harmless, what the Court was saying is that Blakeley simply substantively does not apply because the trial court made a mistake and applied the wrong. You can read it either way. It says the trial court determined contrary to the plain language of Statute 1-X that the offenses were not DCAC. Thus, the error that occurred in Ball's sentences was in his favor and does not warrant Blakeley relief. And that error is the trial court. That's how I read it. At the time of the trial, the DCAC was still a possibility. In other words, the trial court didn't rule against the DCAC until after the trial. Right. The DCAC, there was a motion to dismiss the DCAC prior to trial. That was still pending at the time of the verdict. And was the understanding in Arizona at the time with regard to judicial sentencing of that kind, that is, that it would be based on the trial record? That's, I think, what the had been determined in the case, is that what was going to happen was that this would be sorted out after. They didn't say this, but it would be based on the trial record plus anything else that happened at sentencing. Now, that's not, I don't want to represent that that's exactly what was said, because that's just my understanding of what was going to happen. The, and I think, but when you get down to it, there's really two things. The first thing is, does Blakely apply? And is there a Blakely error? And if there isn't, is it harmless? And there's not a Blakely error. And the reason there's not a Blakely error is because the, the, Blakely doesn't give you a right to jury trial where you, where you, you're, the aggravator is based on your own admissions. And, and here, as, as the court was pointing out, we, we have not only three admissions by the time we get to a stipulation, but we have a stipulation. And, and the court of appeals determined that that stipulation was a stipulation to the trial's, to the child's age. And that's. But it wasn't, in fact. It was a stipulation to what an expert would say. It, it, well, it, the, the, the, I know that's the argument. But when you put it in context, and you have. Well, you don't need to win on that, though, do you? I, no, I don't need to win on that. Because we've got the victim's testimony that she was 10 or 11 when some of these cases were made. If you go into, if you go into Bracton and you go into Australia, no, we don't need to win on that. But my, my point is, just with proper application of Blakely, we don't need to go to harmless error because the, the, the state of affairs was that, as the court of appeals determined, that there was a sufficient stipulation to bind the jury. Now, I, I know that, that, that counsel says that, that, that there was a, a instruction that says that, that the jury's not bound by opinions. But right after that stipulation was read, the trial court said, that's a fact that the jury must take as true. That's what was said in the stipulation. So it's not unreasonable for the, the, the court of appeals to determine that this stipulation was as to the child's age. Another thing on the stipulation, it wasn't a garden variety stipulation that the state's expert will testify that. The stipulation was that the parties stipulate that the tapes were shown to a medical expert. It doesn't align the medical expert with one side or the other. And it says, for the purpose of determining the child's age. And then it says, the medical expert's opinion was. So I think when, when you look at, at the wording of that stipulation, you look at the trial court's instruction, and, and again, at the context in which it was, was made. The court talks about judicial admissions. I, I don't think you can come away with the conclusion under AEDPA that the court of appeals' decision that the jury was bound by that stipulation was an unreasonable determination of fact. Mr. Young argued that we should read Blakeley limiting it to an admission as part of the plea. Blakeley doesn't say that. And, and there's no firmly established, firmly established law that says that Blakeley says that. Blakeley says. Are you saying we would have to make that determination for the first time in interpreting Blakeley, that it also applies to a judicial admission by counsel? Blakeley is, what I'm saying is that Blakeley is not limiting. Blakeley applies. Blakeley says the statutory maximum for apprendee purposes is the maximum sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant. It doesn't say admitted by the defendant at trial or in sentencing or, or at a guilty plea. Sotomayor, does it matter whether we, I mean, one can get to the same place in a harmless error theory, right? I'm sorry. One can get to the same place in a harmless error theory. Absolutely, you get to the same place. In this case. The Court doesn't have to get there. But, but I'm, my point is, is that you don't even have to get to harmless error because there wasn't Blakeley error in the first place when you apply, when you apply Blakeley and you, and you apply the, the court of appeals ruling under AEDPA. But, but there could conceptually, I think, be a situation in which there was an admission at trial on the understanding that there was going to be a separate hearing before the judge, another, an admission at trial for purposes of the trial on the understanding that there was, that that was not going to be binding for sentencing purposes. But I don't think, I don't think the, and I think that's a, that's an issue that, that perhaps a court would have to make in a case-by-case determination whether the admission was effective. But I think in this case, you, you don't have that again. Right. I mean, it appears to me, particularly looking at pages 1450 and following where this stipulation is discussed, counsel basically says we'll stipulate that he knew that she was between 10 and 12 years old. And the court says, well, why are we even trying the case? And basically the position of defense counsel was we're trying to minimize the bringing in of prejudicial evidence that emphasizes this young age. And so it seems like it was a conscious strategic decision on the part of counsel. And I agree with that. It was strategy. They wanted, they admitted that this, they wanted to retain credibility for, for the defense. Was it defense that he didn't know that those tapes were still around? They were in, I didn't, I didn't knowingly possess those tapes, which. Because, I mean, I suppose he could have said, well, I took them a long time ago, I put them in a drawer and I forgot I had them. Well, but, but J.B. testified that after they moved to Pierce, Arizona I think is where that is, that he, he would have J.B. and L.B. watch the videotapes every other week while he sat there naked. And after that he would have sex with both of them. So, again, that was his defense. But I'm not agreeing that the defense was a valid defense. The, on the issue of harmless error, unless the Court has any questions on, on the age point, I'm not going to belabor that, except that we have no contrary evidence, no contrary argument as to how a jury could come to a different decision, why this Court should have grayed out. And, and, and not only in that prism do you have his repeated admissions that the child was 12 years old, and the stipulation that she was between 11 and 12. And you have the child's age herself, that, that, that, I mean, the child's testimony herself, that not only that she was 9 years old when the first video was made, and 12 when the second video was made. So there's, there's no room for any doubt, let alone grave doubt. And I think, and the Court doesn't have to get there, but, but even if the Court applied Brecht in Australia to the original trial court's determination of unrepentant and abiding lifestyle, he still couldn't prevail under Brecht because of the evidence not only of what he did to this child. This isn't a garden variety exploitation of a minor case where you have a picture of, of a minor that's, that's exploited. He, he actually participated in this, and when you look at, at his own description of what he did, and, and you look at her testimony of, of, of what happened afterwards. You do walk into the limitations period problem. Pardon? Then it seems to me you would walk into the limitations period problem. I mean, then you're talking about something that happened a very long time ago. The actual events as opposed to the possession. In other words, I don't know whether you can base it on, on, on what the, the, you could base an enhancement on what these, on what happened at the time the video was made. That was way long ago. Well, but, but, but I, I don't know that there's a limitations problem in preventing the court from taking the, the, the context of, of, of what happened. It, I hadn't thought, I hadn't thought that issue through. But again, my point is, is that, that not only is it, is it, doesn't it violate, it doesn't violate Blakely, but you have harmless error under Brecht with respect to the DCAC, and, and you have, or he, he can't satisfy Brecht with respect to the DCAC, and he can't satisfy Brecht with respect to the trial court's initial determination. And before I sit down, I'd like to, to reiterate what the, what the court said about whether Appellant is doing himself any favors in this, because the State's position is that, is that Appellant is sentenced under an illegally low sentence and that, that the proper crime, or the proper sentence for him is the Dangerous Crimes Against Children Act, and, and that's a consecutive sentence of, of 17 years presumptive for each offense. Thank you, counsel. We appreciate the arguments of both parties, and the case is submitted. We'll take about a 10-minute break.
judges: Alarcon, Graber, Berzon